*1152 The opinion of the cqurt was delivered by
Nicholls, O. J.
The defendants, Ben Depass, James Depass and Alexander Landry, Jr., were jointly indicted for the murder of Alfred Edwards, and upon trial by jury Ben and James Depass were found guilty as charged, without capital punishment, and Alexander Landry was acquitted.
Ben Depass and James Depass have appealed from the sentence against them, and rely for the reversal of the judgment of the lower court upon objections urged in a bill of exceptions reserved in that court and upon an assignment of error in the Supreme Oourt.
The bill of exceptions was as follows:
Bill op Exceptions.
1. “ The defendants placed upon the stand Alexander Landry, Sr. a witness, to prove that shortly before the fatal meeting between the accused and Alfred Edwards, the deceased, the said deceased was heard to utter threats against the lives of defendants, which threats were not communicated to defendants. The defendants having previously placed upon the stand Aaron Johnson, Henry Carlin, Ben Depass and Alexander Landry, Jr., to prove that Ben Depass, who fired the fatal shot, only fired after a demonstration made against him by the deceased, which demonstration consisted in the drawing of a pistol and the pointing of it at Ben Depass, and said witnesses having sworn to such a statement of facts, the evidence of uncommunieated threats, aforesaid, was sought to be introduced in support of the plea of self-defence, and not for the purpose of showing the quo animo of the defendants, but for the sole purpose of showing that the deceased sought the meeting, or began or provoked the combat, and to show the animus of the deceased and to illustrate his conduct and motives. The testimony of the four above mentioned witnesses showed that the acts of the deceased at the time of the encounter that resulted in death were at least of a doubtful character, and defendants offered to introduce the said evidence of uncommunicated threats for the sole purpose stated, and disclaimed any other purpose.”
The State objected to the introduction of this evidence, and the court sustained the objection for the following reasons:
“ The evidence of uncommunicated threats sought to be introduced in this case was rejected on the objection of the district attorney, *1153 because the proof in the case, even the testimony of the witnesses mentioned in this bill of exceptions, three of whom were prosecuted for the murder of Edwards, and the other, Aaron Johnson, was arrested for the same offence, left no doubt of the fact that the defendants were the aggressors, and it shows that they made the attack that resulted in the death of Edwards.
“The facts that led up to the homicide are the following: Three hours before the homicide, Jim Depass and Alexander Landry, two of the men charged with murder in the indictment, were beating another man. Edwards parted them 'and said it was not right for two to jump on one. This ended the difficulty and Edwards went off. Afterward Jim Depass met his brother,Ben Depáss, and had some conversation with him. Ben Depass then went to a store and bought some cartridges and loaded his pistol with them.
“Three hours afterward Ben Depass, Jim Depass, Alexander Landry, Henry Carlin, the cousin of the defendants, and Aaron Johnson assembled at a point near the railroad depot. As Edwards passed he saw them and stopped, and said ‘Good evening, gentlemen.’ They responded, and for several minutes they conversed quietly together. During this conversation one of the Depass boys said to Edwards: ‘ That little seven-shooter of yours is no account.’ Edwards answered: ‘ It is not a seven-shooter, but a good five-shooter.’ He took it out and showed it to them, and then put it back in his pocket.
“ The conversation continued with no reference to a difficulty. A short while afterward, while Edwards was leaning up against a post with his side toward the Depass boys, and not looking at them, Jim Depass suddenly struck Edwards on the head with a large rock, which staggered him and made him reel about in a dazed condition. While in this condition, Ben Depass shot and killed him. While Edwards was reeling and staggering from the blow on the head made with the rock, he attempted to draw his pistol, and did get it out before Ben Depass killed him. Ben Depass and Aaron Johnson said that Edwards pointed it at him. No other witnesses bear him out in this. All the disinterested witnesses, and there were several, say that Edwards was shot down while in the act of drawing and while he was dazed and staggering from the rock blow.
“ The evidence indicated a preconcerted design on the part of Bd *1154 wards’ slayers, and shows conclusively that they made an uprovoked attack upon him and killed him.”
Defendant in this court urges that the ruling of the district judge upon the subject of uncommunieated threats was erroneous, claiming that “ proof of uncommunicated threats is admissible where the question is as to what was deceased’s attitude at the time of the fatal encounter or where it appears that other evidence has been introduced tending to show that the act of homicide was committed in self-defence.” Wharton on Criminal Law, Sec. 1027, and 93 U. S. Rep., p. 465. He contends that the present case was brought under the operation of that rule. We do not think so. Taking the recital of the district judge as to the testimony adduced (which was not taken down in writing) as correct, we do not see what applicability the rule invoked has to the case at bar, and the court under the state of facts shown could not do otherwise than act as it did.
Taking the testimony as a whole and considering it we do not think it can be said there was testimony legally tending to show a case of self-defence.
The accused assigned for error in this court the following irregularities in the proceedings of the court as being shown by the transcript :
“ That the bill of indictment on which defendants were tried was not found by a grand jury regularly organized, nor was it ever properly found and presented by such grand jury in open court.”
We have examined what purports to be a record of the proceedings of this case. On the last page we find a certificate signed by J. B. Verdun, Jr., deputy clerk of the Seventeenth Judicial District Court, parish of St. Mary, to the effect that “the foregoing twenty pages contain a true and correct transcript of all the proceedings had, evidence adduced and documents filed in the suit of the State of Louisiana vs. Ben Depass et als., No. 569 of the criminal docket of the Seventeenth Judicial District Court.” The transcript fails to show the opening of that court either on the first or any other day of the term; it fails to show that a grand jury was ever empaneled or sworn, or that any appointment of foreman was made, and it is throughout so flagrantly defective as to make it difficult to be dealt with as a judicial record at all. We see from it that a judgment has been rendered against these appellants sentencing them to the penitentiary for life. This judgment and the verdict upon which it was *1155 based can not stand on such a record. State vs. Shields, 33 An. 993.
For the reasons assigned it is ordered, adjudged and decreed that the judgment appealed from and the verdict upon which it was based be set aside, and that the said judgment be annulled and reversed, and that defendants be detained in custody subject to the order of the District Court of the parish of St. Mary to await further prosecution or proceedings according to law.